**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| SHARONTA K. PORTER, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br> of the Social Security Administration, )<br>)<br>Defendant.[1] ) | 1:06-cv-612-SEB-JMS |

**Entry Discussing Complaint for Judicial Review**

Sharonta K. Porter ("Porter") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. BACKGROUND**

Porter applied for DIB on October 18, 2002, alleging an onset date of Apirl 1, 2000. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on October 28, 2004. Porter was present, accompanied by her attorney and her husband. Medical and other records were introduced into evidence. Porter, her husband, and a vocational expert testified. The ALJ denied Porter's application on July 21, 2005. On March 16, 2006, the Appeals Council denied Porter's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over Porter's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Porter met the nondisability requirements of the Act through the date of the ALJ's decision; (2) Porter had not engaged in substantial gainful activity since the alleged onset of disability; (3) Porter's obesity and chronic pain syndrome were considered "severe" based on the requirements in the regulations; (4) these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Porter's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the ALJ's decision; (6) Porter had the residual functional capacity ("RFC") to perform light exertional level work with restrictions: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand and walk for six of eight hours with ability to alternate into a sitting or standing position at her option for periods of one to two minutes per hour; no kneeling or crawling and because of the side effects of medication and possible syncope, no climbing of ropes, ladders, or scaffolds; and no work at unprotected heights, around dangerous machinery, or operating a motor vehicle, or being around open flames or large bodies of water; (7) Porter's past relevant work as a customer service representative did not require the performance of work-related activities precluded by her RFC; and (8) Porter's medically determinable obesity and chronic pain syndrome did not prevent her from performing her past relevant work. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Porter was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that Porter had severe impairments consisting of obesity and chronic pain syndrome, but that she could perform her past relevant work as a customer service representative. Porter argues that the ALJ's decision is not supported by substantial evidence. Specifically, Porter contends that the ALJ erred in finding that she could perform her past relevant work, improperly weighed her credibility, and improperly evaluated her mental impairment.

Porter argues that the vocational expert ("VE") testimony conflicted with information contained in the Dictionary of Occupational Titles ("DOT"), and that therefore, the ALJ's conclusion at step four of the analysis is not supported by substantial evidence. Porter relies on Social Security Ruling ("SSR") 00-4p as the basis for her argument. The Seventh Circuit has clarified its interpretation of SSR 00-4p in *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006), noting that "the Ruling imposes an affirmative duty on the part of an ALJ to inquire about conflicts between vocational expert testimony and the DOT." *Id.* (internal quotation omitted). In *Prochaska*, the court remanded the ALJ's decision because he had failed to ask whether the VE's testimony conflicted with the DOT and the court could not in the first instance determine whether the VE's testimony was actually consistent with the DOT. *Id.*

In this case, however, the ALJ did make the necessary inquiry of the VE. (R. at 319). The ALJ is required to explain in his "decision 'how any conflict [with the Dictionary] that *has been identified* was resolved.'" *Prochaska*, 454 F.3d at 735 (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (emphasis in original)). Here, no conflict was identified to the ALJ. The VE testified that his testimony concerning the jobs he identified was consistent with the DOT. (R. at 319). Porter acknowledges that the ALJ did satisfy his burden of inquiry, but argues nonetheless that the VE's testimony conflicted with the DOT and therefore the case should be remanded.

Porter argues, with no supporting evidence of record, that no sedentary jobs listed in the DOT require sitting for only one hour at a time. In *Donahue,* the Seventh Circuit guides the court in situations such as that argued by Porter here, "when the discrepancy goes unexplored?" *Donahue,* 279 F.3d at 446. In that case, the ALJ is entitled to rely on the VE's conclusion, "even if that conclusion differs from the *Dictionary's* - - for the

*Dictionary*, after all, just records other unexplained conclusions and is not even subject to cross-examination." *Id*. Even if there were a conflict between the DOT and the VE's testimony in relation to jobs that permit a worker to alternate into a sitting or standing position for one to two minutes every hour, a point Porter has not demonstrated, the DOT does not necessarily control when there is an inconsistency. *See* SSR 00-4p ("Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict."). The DOT "is published by the Department of Labor as a tool," and "no statute or regulation gives it binding force." *Donahue*, 279 F.3d at 445. Accordingly, there was no error on the part of the ALJ in relation to the VE's testimony.

Porter next argues that the ALJ erred in not properly evaluating her mental condition. The ALJ did fail to specifically discuss each of the "B-criteria" (activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation) pursuant to 20 C.F.R. § 404.1520a, but the ALJ noted the fact that Porter did not allege a mental impairment or any restrictions therefrom. (R. at 38). He further noted that Porter had never received any treatment, including medication, for a mental problem. *Id.* The ALJ ordered a mental status evaluation which revealed no functional limitations and indicated only a possible psychological factor which augmented the actual pain she experiences. (R. at 209-215). Under these circumstances, the ALJ's conclusion that Porter had no severe mental impairment is supported by substantial evidence.

Finally, Porter contends that the ALJ erred in evaluating her credibility by giving too much weight to the fact that she takes care of her four year-old son while her husband is at work. The proper criteria to consider when evaluating a claimant's credibility, as cited by the ALJ, include: daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side-effects of medication; treatment, other than medication, for relief of pain; and the objective medical evidence and any other factors concerning functional limitations and restrictions. (R. at 34, citing Social Security Ruling 96-7p; 20 C.F.R. § 404.1529). The ALJ discussed Porter's testimony, her husband's testimony, the medical evidence, testing results, physician reports, and evaluations by State Agency experts. (R. at 34-38). He noted that the x-rays and EMGs and MRIs were either negative or showed only mild findings. (R. at 37). He stated that Porter demonstrated normal range of motion, normal gait and station, and normal strength, reflexes, coordination and sensation. *Id.* The ALJ noted that she had been treated only conservatively with medication, injections and physical therapy, and that medication had helped significantly. *Id.* Porter had not had surgery or hospitalization and had not used any assistive devices. *Id.* The ALJ observed that there was no objective evidence showing that Porter's impairments limited her to any less RFC than he established. *Id*. The consultative examiner determined that Porter could perform all normal activities of daily living and the State Agency examiners found that she could do light level work with postural limitations. *Id.* The ALJ noted that the mental status examiner implied that Porter "grossly visibly exaggerated her symptoms." (R. at 38). The ALJ noted that Porter had not quit her job due to any impairment, but lost it because of a bank merger. *Id.* In addition to the fact that her alleged limitations and severity of her pain were not supported by the diagnostic testing or by clinical findings, the ALJ noted that Porter took care of her four year-old and did some housework when her husband was at work. *Id.*

The ALJ credited Porter's reports of functional limitations to some extent in assessing her RFC, finding that Porter could do light level work with restrictions: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand and walk for six of eight hours with the ability to alternate into a sitting or standing position at her option for periods of one to two minutes per hour; no kneeling or crawling and because of the side effects of medication and possible syncope, no climbing of ropes, ladders, or scaffolds; and no work at unprotected heights, around dangerous machinery, or operating a motor vehicle, or being around open flames or large bodies of water. *Id.* The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In this case, the ALJ provided reasons supported by record evidence for finding not fully credible Porter's allegations that she was totally disabled. The fact that one of many factors weighed by the ALJ was Porter's ability to care for her four year-old son did not render his assessment patently wrong. The ALJ's discussion relating to Porter's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.[2]

The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). An ALJ's decision is sufficient if, as is true in this case, "it assures us that an ALJ considered the important evidence and enables us to trace its reasoning." *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).

In determining Porter's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Porter's age, education, and work history; (2) Porter's history of diagnoses, treatment, medications, and evaluations; (3) Porter's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of a VE.

---

[2]Porter also argues that the ALJ lacked a reasonable basis in fact or law to find Porter not credible and not disabled due to her inability to lose weight. The ALJ did state that Porter had "gained sixty pounds in a year and evidently has made no effort to comply with this advice [to lose weight as part of her treatment]." (R. at 37). Porter argues that the ALJ should not assume that if Porter complied with a recommendation to lose weight, her ability to work would be restored. That is true, but the ALJ did not make this assumption. The ALJ should not have assumed that Porter had made no effort to lose weight, but in any event, the ALJ did acknowledge that Porter's obesity "obviously has impacted on her musculoskeletal symptoms and her health in general." *Id.* The ALJ noted that although her obesity was "severe," it had not affected her ability to perform the examination physical maneuvers. *Id.* The ALJ's evaluation of Porter's obesity did not rise to the level of legal error nor did it significantly taint his credibility determination.

There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. The ALJ discussed the evidence and explained his rationale for accepting and rejecting the various opinions of record. As noted above, the court cannot reweigh the evidence. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Porter's impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated his assessment of the evidence and there was substantial evidence to support the ALJ's determination that Porter was not disabled as defined in the Act at any time through the date of the ALJ's decision.

## III. CONCLUSION

There was no reversible error in the assessment of Porter's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Porter is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 05/25/2007

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana